UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA A. ZICKEFOOSE-McCOY, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CASE NO. 13-CV-85-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Debra A. Zickefoose-McCoy, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The

court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff Debra A. Zickefoose-McCoy's applications for Title II and Title XVI benefits filed March 15, 2006 were denied initially and upon reconsideration. Plaintiff subsequently amended her disability onset date to October 31, 2007. Plaintiff alleged she was unable to work due to arthritis in her elbows and shoulders, back pain, and mental problems. [R. 77]. Plaintiff was 50 years old on the alleged date of onset of disability and 55 years old on the date of the ALJ's denial decision. She has a 12th grade education and previously worked as a warehouse worker and receptionist.

A hearing before Administrative Law Judge (ALJ) Lantz McClain was held March 29, 2009. The ALJ denied benefits, the Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to the District Court which reversed and remanded the ALJ's decision for further proceedings to address the mental demands of Plaintiff's past relevant work in Step Four.

On remand a hearing before ALJ McClain was held. At Plaintiff's request, a supplemental hearing was held on May 4, 2012. On June 29, 2012, the ALJ entered the denial decision now on appeal. [R. 265-280]. The Appeals Council found no reason to assume jurisdiction. The ALJ's decision after remand is a final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

2

## The ALJ's Decision

The ALJ found that Plaintiff has severe impairments relating to degenerative disc disease, borderline intellectual functioning, mild depression, and anxiety. [R. 267]. The ALJ also found that Plaintiff's history of Graves' Disease was non-severe and her schizophrenia was medically non-determinable. [R. 268]. The ALJ determined that Plaintiff has the residual functional capacity to perform medium[1] work with the limitation of stooping occasionally, performing simple and repetitive tasks, and is limited to no more than incidental contact with the public. [R. 270].

The ALJ determined that Plaintiff had no past relevant work. Based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 280]. Therefore, the ALJ found that the Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider medical source opinions; 2) failed to perform proper step four and step five determinations; 3) failed to perform a proper credibility determination; 4) incorrectly determined that Plaintiff does not meet or equal a listing; and 5) failed to protect Plaintiff's due process rights.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. C.F.R. § 404.1567(c).

3

## Analysis

### Medical Source Opinions

Plaintiff argues that the opinions of her treating psychiatrist, Dr. Hazem Sokkar, M.D., mental consultative examiner Dr. Atwood, and the state agency medical consultant were improperly considered by the ALJ. [Dkt. 17, p. 2-6]. Plaintiff also contends that the ALJ erred in finding her diagnosis of schizophrenia medically non-determinable.

The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004); see also Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *2. However, if either of these requirements is not met, the opinion is not entitled to controlling weight.

Plaintiff's treating psychiatrist, Dr. Sokkar completed a Mental Residual Functional Capacity Assessment on April 19, 2012, [R. 695-96], in which he reported Plaintiff had multiple severe work-related limitations and a number of moderate limitations. [R. 695-96]. Dr. Sokkar also completed a Mental Status form. [R. 697-698]. There Dr. Sokkar states:

> 1) She has difficulty comprehending and carrying out complex instructions on an independent basis. She also has difficulty remembering simple instructions.
>
> 2) She has difficulty responding appropriately to work pressure, supervision and coworkers.

[R. 698]. The ALJ stated he gave Dr. Sokkar's opinion little weight because it was internally inconsistent and because the opinion was not entirely consistent with his treatment notes. [R. 278]. The treatment notes were set out in detail in the decision. [R. 274, 277, 278].

4

The ALJ stated the opinion of Dr. Sokkar is "internally inconsistent". [R. 278]. The ALJ explained that although Dr. Sokkar found the claimant to be "markedly limited . . . in the ability to understand and remember very short and simple directions." [R. 278], he also found Plaintiff's memory was good in all three phases (immediate, recent, and remote). The ALJ noted that Dr. Sokkar found Plaintiff's ability to think, reason, and respond was good, her insight and judgment were good, as was her concentration, but she was limited in carrying out even simple instructions. [R. 278, 695, 697]. In discussing Dr. Sokkar's records, the ALJ noted that Dr. Sokkar's findings were not inconsistent with the RFC findings. [R. 274. 276]. The RFC limited Plaintiff to the performance of simple and repetitive tasks with no more than incidental contact with the public. [R. 270]. The ALJ thus included the RFC limitations that were supported by the records, including Dr. Sokkar's records. Further, in outlining Dr. Sokkar's treatment notes, the ALJ acknowledged the length of the treatment relationship, frequency of evaluation, that Dr. Sokkar provided psychiatric evaluation, medication management, and psychotherapy, and that the opinion is not supported by Dr. Sokkar's notes. The court finds therefore, that the ALJ conducted the analysis required by 20 C.F.R. §§ 404.1527, 416.927 for assessing the amount of weight to be accorded a medical source opinion. The court finds that the ALJ gave sufficient reasons for rejecting Dr. Sokkar's opinions and finds that the ALJ's reasons are supported by substantial evidence.

At step two, the ALJ found that Plaintiff's schizophrenia was medically non-determinable. Plaintiff argues that this finding was in error and that the ALJ further erred in failing to follow the recommendations of consultative examiner, Dr. John T. Atwood to "rule out schizoaffective disorder" and therefore failed to develop the record. In reporting

the results of a mental consultative examination, Dr. Atwood stated that a schizoaffective disorder should be ruled out. [R. 166]. Following that report, psychological testing was performed in which Dr. Cooper found no signs of psychosis. [R. 169]. Plaintiff was diagnosed with schizophrenia by Dr. Sokkar, [R. 679], but treatment notes thereafter record that Plaintiff denied hallucinations and paranoia, [R. 657-680], and hallucinations and paranoia were only sporadically reported after the diagnosis. The court finds that the record was fully developed concerning Plaintiff's alleged schizophrenia.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). In this case, regardless of whether the ALJ considered Plaintiff's alleged schizophrenia to be a medically determinable impairment, the ALJ appropriately considered the functional limitations imposed by her mental condition, irrespective of any particular diagnosis.

Plaintiff argues that the decision should be reversed because the ALJ "inconsistently considered schizophrenia as a severe impairment at step 3 of the sequential evaluation process." [Dkt. 17, p. 3]. It is not entirely clear what Plaintiff means here, but

it appears that Plaintiff is complaining that the ALJ somehow committed error by considering the Listing of Impairments (Listings)[2] for schizophrenia. (Listing 12.03, Schizophrenic, Paranoid and Other Psychotic Disorders). The undersigned fails to see how Plaintiff could possibly claim harm resulted from the ALJ's consideration of that Listing. No principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to believe that the remand might lead to a different result. *See Moua v. Colvin*—Fed. Appx. — (10th Cir. 2013), 2013 WL 3951709, *3 (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

The court finds no merit to Plaintiff's assertion that the ALJ ignored unfavorable vocational expert testimony. The testimony Plaintiff suggests was ignored was the vocational expert's statement that "if an individual has difficulty tolerating even normal work stress, depending upon their response to it, again, keeping the job may be problematic." [Dkt. 17, p. 6; R. 314]. That statement cannot reasonably be read as an affirmative statement about Plaintiff. It was clearly a speculative comment as evidenced by the qualifiers contained therein: of, depending, and may.

The court finds no error in the ALJ's use of the following stock boilerplate language:

---

[2] The Listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

7

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout the decision)(Exhibits 5F, 6F, 8F, 9F, 11F, 12F, 19F, 20F, 21F, 23F and 25F).

[R. 278-79]. These opinions are not contrary to the ALJ's decision as the reviewing physicians all found Plaintiff was able to work. In view of the fact that the opinions are not contrary to the ALJ's decision and do not support Plaintiff's claim for disability, the ALJ's failure to discuss those opinions is harmless. The undersigned is confident that no reasonable administrative factfinder discussing these opinions in detail could have resolved the disability decision in any other way. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)(reversal not required where certain technical errors are minor enough not to undermine confidence in the determination of the case).

### Steps Four and Five Determination

The regulations require the ALJ to rate the degree of limitation in four mental functional categories (daily living, social functioning, concentration/persistence/pace, and decompensation), which correspond to the criteria in paragraph B of most of the mental impairments found in § 12.00 of the Listings. The degree of limitation in the four categories determines whether a claimant has a severe mental impairment and whether such impairment meets or equals the listings. 20 C.F.R. §§ 404.1520a(d)(1), (2), 416.920a(d)(1), (2). After the ALJ determines that the claimant's mental impairment is severe but does not meet or equal a listing, the ALJ "will then assess [the claimant's] residual functional

capacity." 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). Social Security Ruling (SSR) 96-8p explains that even though the ALJ must determine a claimant's limitations in these categories, these ratings are not an RFC assessment.

Plaintiff asserts that the moderate limitations in social functioning and concentration, persistence, or pace should have been included in the hypothetical questioning. The court finds no error in the ALJ's hypothetical questioning to the vocational expert. Questions to a vocational expert are properly expressed in terms of the ability to perform work-related functions. The ALJ's hypothetical question included the work-related impairments borne out by the record and which flow from the limitations in social functioning and concentration, persistence, and pace such as the limitation to simple and repetitive tasks and no more than incidental contact with the public. [R. 311].

The ALJ discussed Plaintiff's limitations in social functioning and concentration, persistence, and pace, as part of his step three determination of whether Plaintiff met a Listing. [R. 270]. After concluding that Plaintiff did not meet a Listing, the ALJ properly continued his analysis and determined how Plaintiff's mental difficulties impacted her RFC. [R. 270]. The ALJ complied with the proper legal standard in posing hypothetical questions to the vocational expert.

There is no merit to Plaintiff's argument that the ALJ erred by not finding that her two suicide attempts were episodes of decompensation under 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(C). The regulations define the term "repeated episodes of decompensation" as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* Plaintiff's two suicide attempts do not meet the definition of episodes of decompensation. However, even if Plaintiff's suicide attempts were

9

considered to be episodes of decompensation, it is not appropriate to include such episodes in the RFC and hypothetical questioning because they are not vocational limitations. Further, any failure to cast the suicide attempts as episodes of decompensation did not affect the analysis of the Listings because Plaintiff does not otherwise meet the requirement of having marked limitations in two categories of functioning.

## Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).  The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including: Plaintiff's poor work history, her alleged symptoms were contradicted by the medical evidence, and she did not consistently report her symptoms to her treating psychiatrist. [R. 272-273].  The ALJ thus properly linked his credibility finding to the record.  Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

Listing § 12.05C

Plaintiff claims she met Listing 12.05C for mild mental retardation and argues the ALJ erred in finding that she did not meet that Listing. Listing 12.05 is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1., and as relevant to this case requires:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

In order to satisfy Listing 12.05C, Plaintiff must first satisfy the "capsule definition" which requires Plaintiff to show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i. e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 12.05. Nothing in the record demonstrates Plaintiff exhibited signs of subaverage intellectual functioning before age 22. On the contrary, Plaintiff testified that she graduated from high school and did not take any special education classes. [R. 229]. In addition, Plaintiff is independent in her activities of daily living and she provides care for her mother. [R. 232].

In addition to the capsule definition of mental retardation, Plaintiff must also satisfy two additional prongs in order to meet the requirements of *Listing* 12.05C: "a valid verbal,

11

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, Subpt. P, App. 1.   A WAIS-III dated September 21, 2006, was performed by Dr. William Cooper, Ph.D. who reported Plaintiff had a verbal IQ of 64, a performance IQ of 62 and a full scale IQ of 60.  However, Dr. Cooper expressed doubts as to whether the testing results were valid.  He stated:

> **However, the present scores do not appear to be a good estimate of her current abilities.  Her performance was quite inconsistent within subtests, as she would often fail very easy items, while passing much more difficult items.** While it was not clear that she was intentionally malingering, her oppositionality may have influenced the test results to some degree.  More importantly, it is likely that the combination of her anxiety, depression, and other emotional factors interfered with her present performance.

[R. 169].  (Emphasis added).  Based on Dr. Coopers' findings, the ALJ determined that Plaintiff did not have a valid verbal, performance, or full scale IQ of 60 through 70.  [R. 270]. The court finds that the ALJ's determination that Plaintiff has not met the requirements of section 12.05C is supported by substantial evidence.

### Due Process Violation Claim

Plaintiff argues that the decision should be reversed because the ALJ did not protect her due process rights.  Plaintiff bases this claim on her inability to cross-examine consultative examiner Dr. Gordon.

Dr. Gordon evaluated Plaintiff twice.  [R. 575-78; 681-83].  Plaintiff objected to Dr. Gordon's reports.  [R. 295-96; 322-23; 489].  Plaintiff asserts that she had a right to cross-examine Dr. Gordon and that the ALJ *promised* to produce Dr. Gordon but Dr. Gordon was

not produced and the ALJ did not explain why the doctor was not produced. [Dkt. 47, p. 12; Dkt. 26, p. 5]. According to Plaintiff, these actions constitute a denial of due process.

Initially, the court notes that the ALJ did not promise to produce Dr. Gordon. The ALJ's letter at page 487 of the Administrative Record informs Plaintiff of the right to request a hearing and to request an opportunity to question Dr. Gordon. The letter further states: "I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues.": [R. 487]. The ALJ noted Plaintiff's objections to Dr. Gordon's opinions in the decision, [R. 276, 277], and found that Dr. Gordon's findings were consistent with other evidence of record. However, the ALJ gave no weight to Dr. Gordon's mental RFC form which expressed the opinion Plaintiff had no mental work-related limitations. [R. 277].

Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir.2005). A due process claim will not succeed, however, if the claimant fails to show prejudice. See *Energy W. Mining Co. v. Oliver,* 555 F.3d 1211, 1219 (10th Cir.2009). Thus, when "a party complains about the course of administrative proceedings, that party must demonstrate that the adjudication was infected by some prejudicial, fundamentally unfair element." Id. (internal quotation marks omitted); see *Glass v. Shalala*, 43 F.3d 1392, 1396–97 (10th Cir.1994) (requiring a showing of prejudice for a due-process claim involving social-security proceedings).

The court finds that the ALJ's failure to agree to Plaintiff's request to present Dr. Gordon for a hearing does not demonstrate a prejudicial fundamentally unfair element. The case Plaintiff cites to support her right of cross examination pertains to a state criminal trial, not an administrative hearing such as is involved in the instant case.

13

## **Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 27th day of March, 2014.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE